**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**Eastern Division**

| | |
|---|---|
| In re:<br><br>    U.S. Credit, Inc.,<br><br>        Debtor | Chapter 11<br>Case No. 24-10058-JEB |

**OBJECTION OF FIRST & PEOPLES BANK AND TRUST COMPANY**
**TO DEBTOR'S MOTIONS FOR TO AUTHORITY TO USE CASH COLLATERAL**
**AND TO MAINTAIN CASH MANAGEMENT SYSTEM**

First & Peoples Bank and Trust Company ("First & Peoples Bank") objects to the Debtor's Motion for Entry of Order authoring the Use of Cash Collateral (doc. no. 10) (the "Cash Collateral Motion") and Motion for Order Authorizing the Debtor to Continue Using Existing Cash Management System (doc. no. 11) (the "Cash Management Motion" and the Supplements thereto (doc. nos. 114 and 115) and collectively, "Motions"), [1] because debtor U.S. Credit, Inc. ("U.S. Credit" or the "Debtor") fails to provide the required adequate protection of First & Peoples Banks' interests in the cash, accounts, collections and revenue Debtor seeks to utilize, or even adequately describe or disclose how the Debtor's cash management system is deployed to collect funds and proceeds owned by or collateral of First & Peoples Bank (and others)—funds which the Debtor now collects and holds as fiduciary, trustee or agent for First & Peoples Bank and which is not property of the Debtor's estate.  As further grounds for this opposition, First & Peoples Bank states as follows:

---

[1] This opposition has been prepared before any supplemental support or amendments to one or both Motions have been filed; the Court ordered the Debtor to file supplemental support, if any, with a deadline of 90 minutes before the continued hearing on the Motions.

As detailed herein, the Debtor collects and holds at least three separate and distinct categories of funds on loans and commercial paper owned by First & Peoples Bank, or in which First & Peoples has an interest which requires adequate protection.[2]

(a) funds in the Debtor's deposit account at First & Peoples Bank, in which the First & Peoples Bank holds a perfected security interest, securing the Debtor's [loss coverage] obligations to First & Peoples Bank (one of the "Residual Interest Accounts" identified in the Cash Management Motion, para. 11;[3]

(b) principal and interest payments for loans which are owned (in total, or as a participant) by First & Peoples Bank and collected or held by U.S. Credit as servicer, co-mingled with bank accounts identified as "Owned Portfolio Accounts" in the Cash Management Motion, para. 10; and

(c)      principal and interest payments for loans the Debtor initiated and documented as agent for First & Peoples Bank commercial paper—which are property of First & Peoples as and when issued—for which the Debtor improperly asserts are in portfolios owned by the Debtor. This third category includes collections on loan agreements and promissory notes issued to consumers via the Debtor's Point of Sale (POS) consumer finance programs and systems, which were funded by loan sale proceeds of First & Peoples improperly retained by U.S. Credit as the bank's agent and trustee from the Debtor's sale or assignment of participation interests in other loans owned by First & Peoples; or for which the Debtor failed and is failing to account for

---

[2] Bankruptcy Code section 363(e) ("Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.")

[3] Pursuant to the Order Appointing Receiver entered by the Kentucky Court, First & Peoples Bank transferred this money to the Receiver, at the Receiver's request, well prior to U.S. Credit's filing of bankruptcy.

and/or document the loan portfolio assignment to First & Peoples Bank, the required condition of First & Peoples Bank's consent to the collateral assignment of certain loans to Clear Haven Capital Management ("Clear Haven") in the transaction the Debtor structured and closed with its lender Clear Haven.

1.      U.S. Credit and First & Peoples Bank entered a financial business relationship by which First and Peoples Bank, a state-chartered bank located in Russell, Kentucky, was involved in a marketplace lending arrangement, arranged and organized by U.S. Credit pursuant to the August 3, 2020 Program Services and Management Agreement ("Program Services Agreement"). *August 3, 2020 Program Services Agreement* (attached hereto as **Exhibit A**)[4].

2.      Under the terms of the Program Services Agreement, First & Peoples Bank was to fund marketplace loans[5] underwritten and originated by U.S. Credit, which U.S. Credit would then sell to a pre-committed purchaser.  Third-party purchasers included Connexus Credit Union ("Connexus") and Georgia's Own Credit Union ("Georgia's Own"), each of which had commitments to purchase certain loans funded by First & Peoples Bank and arranged by U.S. Credit.  As part of these transactions, First & Peoples Bank typically retained a small percentage of the loans (5%) sold to third-party purchasers.  Once the loans were sold, U.S. Credit had a duty to remit the proceeds to First & Peoples Bank.

3.      Moreover, U.S. Credit was required, as part of the arrangement, to act as a servicer for the loans both when they were funded by First & Peoples Bank, and once they were purchased by a third-party purchaser.  In acting as servicer, U.S. Credit was and is responsible for, either directly, and through a third-party servicer which U.S. Credit selects and oversees, collecting principal and interest payments from borrowers on loans that are owned, either in

---

[4] The documents referenced as exhibits herein will be filed separately.
[5] Marketplace loans, in this context, typically involved point of sale financing for consumer items, home improvement loans, and other unsecured lending arrangements.

whole or in part, by First & Peoples Bank and others (such as third-party purchasers).  U.S. Credit is required, by contract, to collect these monies and transmit the same to the respective owners of said loans whether that be First & Peoples Bank, another loan funder, or third-party purchasers.  As such, U.S. Credit assumed a duty on behalf of First & Peoples Bank to receive, hold, and transmit the principal and interest payments to First & Peoples Bank.

4.      U.S. Credit has breached those duties, and their requested relief would do nothing but further exacerbate these breaches and use monies U.S. Credit was never entitled to obtain.

*1)      First & Peoples Bank has an interest in the Valley Account and/or other accounts into which U.S. Credit is depositing principal and interest payments.*

5.      As noted above, as part of the various contractual arrangements between the parties, U.S. Credit was required to account for, collect, and remit to First & Peoples Bank principal and interest payments from borrowers on loans owned, either whole or in part, by First & Peoples Bank.

6.      Since at least July 2023, U.S. Credit has failed to remit the principal and interest payments that it has collected on behalf of First & Peoples Bank.  These funds continue to be collected from borrowers by U.S. Credit but are no longer being remitted to First & Peoples Bank.

7.      U.S. Credit has received a significant amount of principal and interest payments that should have been remitted to First & Peoples Bank from both third-party servicers, including UGA and Zuntafi, and through its own direct servicing of the loans.

8.      First & Peoples Bank has learned that UGA continues to collect significant amounts of principal and interest payments and transmits the same to U.S. Credit.  Specifically, for the months of October, November, and December 2023, UGA collected over $600,000 in principal and interest payments on loans owned by First & Peoples Bank that should have been

paid to First & Peoples Bank. U.S. Credit was required to remit these monies to First & Peoples Bank, but has instead retained these funds for its own benefit.

9.      Importantly, this arrangement is <u>different</u> from the arrangement that some other creditors have with U.S. Credit. By way of example, Connexus Credit Union does not allow U.S. Credit to receive any principal and interest payments on its behalf and instead receives the funds directly from the third-party servicer.

10.      The amount collected by UGA over a short three (3) month period is only a partial amount of funds that U.S. Credit has received and will receive in the future that is due and owing to First & Peoples Bank. Upon information and belief, U.S. Credit continues to use other third-party servicers and directly services loans owned by First & Peoples Bank.

11.      Using U.S. Credit's own records, the total amount owed to First & Peoples Bank was $1.6 million for servicing collections as of October 2023. *See U.S. Credit, Inc. Unpaid Settlements* (attached hereto as **Exhibit B**).

12.      Upon information and belief, these amounts are received and/or pass through U.S. Credit's Valley Bank account. Despite this, these amounts, which continue to accrue monthly, are not reflected on U.S. Credit's Valley Bank account document presented to the Court, and it is otherwise unclear as to where they are or how they have or will be used.

13.      The lack of clarity is only compounded by U.S. Credit's representations in this Court and elsewhere. Specifically, U.S. Credit has stated that there are principal and interest payments from home improvement loans that are in its "account with Sunwest Bank, account number ending in 6411" that stem from portfolios owned by U.S. Credit. *Motion to Continue Using Existing Cash Management System* at 3. However, U.S. Credit represented to the Kentucky Court, in the related Kentucky litigation, that the money contained in the Sunwest

account is "a separate account [that] is held and that the moneys for the benefit—this—the moneys in this account are moneys coming in from [sic] the [benefit of] First & Peoples[.]" *December 18, 2023 Transcript* at 6 (attached hereto as **Exhibit C**). This record was produced after U.S. Credit's counsel, at a hearing on December 14, 2023, represented to the Court that all the money owed to First & Peoples Bank was being held in escrow.

14.     Accordingly, it is wholly unclear as to the location of these funds, and there is a significant risk that money owed to First & Peoples Bank has been and will continue to be improperly converted for U.S. Credit's own use.

*2)*     ***First & Peoples Bank has an interest in the Residual Interest Account.***

15.     As part of its request for a cash management system, U.S. Credit has requested access and use of several accounts referred to as residual interest accounts, including an account at First & Peoples Bank, account number ending in 4623.[6]   Contrary to U.S. Credit's representations, this residual interest account does not belong to it, but rather was established for the benefit of First & Peoples Bank.

16.     Pursuant to an August 25, 2020 Closed-End Consumer Installment Loan Purchase and Sale Agreement between U.S. Credit and First & Peoples Bank, this residual interest account was set up to protect First & Peoples Bank, as the purchaser of certain loans, against defaults. *August 25, 2020 Closed-End Consumer Installment Loan Purchase and Sale Agreement* (attached hereto as **Exhibit D**). This Agreement stated that, "in the event of a default, Seller will provide Purchaser with default loss protection by depositing a portion of Sellers accrued Monthly Interest Income at Purchasers Institution." *Id.* at 6.[7]

---

[6] Pursuant to the Order Appointing Receiver entered by the Kentucky Court, First & Peoples Bank transferred this money to the Receiver, at the Receiver's requested, well prior to U.S. Credit's filing of bankruptcy.

[7] This Agreement outlines this process as follows:

17.     A significant portion of the loans purchased by First & Peoples Bank are consistently in default.  In fact, to date, First & Peoples Bank has realized losses in an amount exceeding $1.7 million, which increases each quarter.

18.     Thus First & Peoples Bank is entitled to invoke the default provisions of its agreement with U.S. Credit and receive the monies held in the residual interest account.

***3)      U.S. Credit wrongfully retained  sales proceeds owed to First & Peoples Bank.***

19.     Further, at the core of the relationship between U.S. Credit and First & Peoples Bank, was the loan reselling aspect.

20.     Beginning in approximately June 2022, U.S. Credit ceased transmitting funds received as a result of sales of loan packages owned by First & Peoples Bank.

21.     U.S. Credit has sold millions of dollars worth of loans owned by First & Peoples Bank and failed to remit  the funds to First & Peoples Bank.

---

1.      Seller agrees to establish and maintain a Seller Interest Income Escrow Account at Purchasers Institution for the entire term of this agreement.

2.      The balance of the Sellers accrued monthly coupon interest (Minus 8% to Purchaser and 4% to Seller acting as Master Servicer) will be deposited into the Seller Interest Income Escrow account and retained by Purchaser as additional collateral against any potential loan default losses in the pool.

3.      If a borrower loan cannot be brought current, and Seller does not replace the defaulted loan with a new loan that minimally, retains the same loan amount and remaining duration of the defaulted loan; Purchaser will withdraw the full P&I of the defaulted loan from Sellers Interest Income Escrow Account between Day 85 & 89 (Considering for weekends and holidays).

4.      If a defaulted loan is not replaced under the conditions set forth in Sec (b) and paragraph 3 above, loan default losses will be withdrawn by Purchaser from the Sellers Interest Income Escrow Account on a monthly/quarterly basis.

5.      The remaining interest retained in Sellers Interest Income Escrow Account at the end of each quarter (Seller's Income) will be made available to Seller by Purchaser on the last day of each monthly quarter end.

6.      This process will occur each quarter for the entire duration of the agreement.

22.     Therefore, U.S. Credit continues to hold millions of dollars of loans owned by First & Peoples Bank, and does not remit proceeds of the loans to First & People's Bank.

23.     These funds and loans likely make up a significant portion of the accounts that are the subject of U.S. Credit's pleadings.

**4)     U.S. Credit retained line of credit funds received for loans owned by First & Peoples Bank**.

24.     As has been represented to the Court, in approximately December 2022, U.S. Credit elected to open a line of credit with Clear Haven.

25.     As part of this, U.S. Credit secured several assignments of loans owned by First & Peoples Bank from First & Peoples Bank to U.S. Credit so that the loans could be then assigned as collateral to Clear Haven.

26.     In order to secure said assignments, U.S. Credit represented and promised that any funds received from Clear Haven for the assigned loans would be transmitted to First & Peoples Bank.

27.     U.S. Credit used the loans assigned by First & Peoples Bank to receive funds from the Clear Haven line of credit. Despite this, U.S. Credit did not provide any funds to First & Peoples Bank.

28.     Upon information and belief, proceeds from these transactions, rightfully owed to First & Peoples Bank, have been used to further U.S. Credit's interests.

29.     The Debtor's Cash Management Motion and Cash Collateral Motion seek to use cash from sources or accounts which are either property of, or held in trust as agent for, First & Peoples. Whether already segregated in an account (i.e., the Residual Interest account) or co-mingled with other third parties' property and/or the Debtor's actual own funds, such property is

not property of the estate.  11 U.S.C. § 541(d); see also *U.S. v. Whiting Pools, Inc*., 462 U.S. 198, 205 n. 10 (1983) ("We note . . ..  that Congress plainly excluded [from the bankruptcy estate] property of others held by the debtor in trust at the time of the filing of the petition."); *Begier v. I.R.S.,* 496 U.S. 53, 59 (1990) (when debtor holds property in trust for another, any debtor interest in same is not 'property of the estate').

WHEREFORE, First & Peoples Bank and Trust Company requests that this Court deny the Debtor's Cash Collateral Motion and Cash Management Motion, prohibit the Debtor from collecting from its sub-servicers any loan or loan portfolio owned (in whole or as a participant) by First & Peoples Bank; segregate any collections of principal, interest and "residual interest" in which First & Peoples has an interest; and, require the Debtor to provide adequate protection for any interest of First & Peoples in cash from any account which includes such funds.

Respectfully submitted,
First & Peoples Bank and Trust Company
By its attorneys,

/s/ John T. Morrier
John T. Morrier (BBO No. 628624)
CASNER & EDWARDS, LLP
303 Congress Street
Boston, Massachusetts  02210
Telephone:  617-426-5900
Facsimile:  617-426-8810
Dated: January 25, 2024        Email:  morrier@casneredwards.com

Jason R. Hollon (admitted pro hac vice)
Jaron R. Blandford (admitted pro hac vice)
McBrayer PLLC
201 East Main Street, Suite 900
Lexington, Kentucky 40507
(859) 231-8780
jhollon@mcbrayerfirm.com
jblandford@mcbrayerfirm.com

**CERTIFICATE OF SERVICE**

I, John T. Morrier, hereby certify that on this 29th day of January 2024 , I caused to be served a copy of the foregoing electronically on all registered users in this case via the Court's CM/ECF System.

/s/ John T. Morrier
John T. Morrier